# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| JOHN LEE COCKERHAM, JR., | § | |
| Reg. No. 97305-180, | § | |
|     Petitioner, | § | |
| | § | EP-15-CV-382-PRM |
| v. | § | |
| | § | |
| J.S. WILLIS, Warden, | § | |
|     Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered pro se Petitioner John Lee Cockerham, Jr.'s "Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241" (ECF No. 1-2)[1] [hereinafter "Current Petition"], filed on December 14, 2015, in the above-captioned cause.   Petitioner, an inmate confined at the La Tuna Federal Correctional Institution in Anthony, Texas,[2] challenges Respondent J.S. Willis's custody over him based on

---

[1] *See* J., Dec. 18, 2009, ECF No. 221, *United States v. Cockerham*, SA-07-CR-511-OLG-1 (W.D. Tex.), *aff'd*, 396 F. App'x 66 (5th Cir. 2010), *cert. denied*, 132 S.Ct. 51 (2011).   "ECF No." in this context refers to the Electronic Case Filing number for documents docketed in this and other cases involving Petitioner.   Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

[2] Anthony is located in El Paso County, Texas, which is within the

1

his guilty-plea convictions for conspiracy to defraud the United States, bribery as a public official, and conspiracy to commit money laundering.[3] Petitioner argues that the trial court "lacked the subject matter jurisdiction and power to hear the case brought against" him.[4]   After reviewing the record, and for the reasons discussed below, the Court will dismiss Petitioner's cause, pursuant to 28 U.S.C. § 2243, because it appears from his pleading that he is not entitled to relief.[5]

## I.    FACTUAL AND PROCEDURAL HISTORY

From June 2004 through December 2005, the Department of Defense ("DOD") deployed Petitioner, then a Major in the United States Army, to Camp Arifjan, Kuwait, where he served as a contracting officer

---

territorial limits of the Western District of Texas.   *See* 28 U.S.C. § 124(d)(3) (2012).

[3] *See* Current Pet. 1—2, Dec. 14, 2015, ECF No. 1-2.

[4] *Id.*

[5] *See* 28 U.S.C. § 2243 (2012) ("A court . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.").

2

in support of Operation Iraqi Freedom.[6]   While deployed, Petitioner

solicited bids and awarded DOD contracts for goods and services

necessary to support military operations in Southwest Asia.[7]

Petitioner's wife, Melissa Cockerham, and sister, Caralyn Blake, were

also "employed as a government contractor[s]" in Kuwait, Dubai, and

Iraq.[8]

While in Kuwait, Petitioner agreed to accept approximately $ 9.6

million in bribes from numerous contractors in return for using his

official position as a contracting officer to award DOD contracts to them.[9]

Petitioner thereafter deposited the bribe proceeds in safe deposit boxes

and bank accounts in Kuwait and Dubai in the names of Melissa

Cockerham and Caralyn Blake.[10]

On August 22, 2007, a federal grand jury sitting in the Western

---

[6]  Current Pet. 4; Officer Evaluation Report, ECF No. 1-1.

[7]  Factual Basis for Guilty Plea 1, Jan. 31, 2008, ECF No. 90, *United States v. Cockerham*, SA-07-CR-511-OLG-1 (W.D. Tex.).

[8]  Current Pet. 4.

[9]  Factual Basis for Guilty Plea 3.

[10]  *Id.*

District of Texas, San Antonio Division, returned a six-count indictment against Petitioner, Melissa Cockerham, and Caralyn Blake.[11] Petitioner pleaded guilty, pursuant to a plea agreement, to three counts: conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 ("Count One"); bribery by corruptly agreeing to receive things of value in return for being influenced in the performance of his official acts, in violation of 18 U.S.C. § 201(b)(2)(A) and (C) ("Count Four"); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) ("Count Five").[12]  The Court accepted Petitioner's pleas and sentenced him to 60 months' imprisonment on Count One, 180 months' imprisonment on Count Four, and 210 months' imprisonment on Count Five, to run concurrently.[13]  The Fifth Circuit Court of Appeals affirmed Petitioner's convictions, and, on May 2, 2011, the Supreme Court denied

---

[11] Indictment 1, Aug. 22, 2007, ECF No. 14, *United States v. Cockerham*, SA-07-CR-511-OLG-1 (W.D. Tex.).

[12] Min. Entry 1, Dec. 2, 2009, ECF No. 185, *United States v. Cockerham*, SA-07-CR-511-OLG-1 (W.D. Tex.).

[13] *Id.* at 1–2.

his petition for a writ of certiorari.[14]

Thereafter, Petitioner filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct a sentence dated July 19, 2012.   In his § 2255 motion, Petitioner asserted, among other grounds for relief, that he was actually innocent with regard to the money laundering conspiracy.[15] Nevertheless, the Court denied Petitioner's § 2255 motion as time barred,[16] and the Fifth Circuit denied Petitioner's request for a certificate of appealability.[17]

Petitioner then filed a second motion seeking habeas corpus relief under 28 U.S.C. § 2241 on October 7, 2013.[18]   Relying on the Supreme

---

[14] *United States v. Cockerham*, 396 F. App'x 66, 67 (5th Cir. 2010), *cert. denied*, 132 S.Ct. 51 (2011).

[15] Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Set Aside Sentence by a Person in Federal Custody 11–12, July 23, 2012, ECF No. 413, *United States v. Cockerham*, SA-07-CR-511-OLG-1 (W.D. Tex.).

[16] Order Accepting Magistrate Judge's Recommendation, Aug. 27, 2012, ECF No. 422, *United States v. Cockerham*, SA-07-CR-511-OLG-1 (W.D. Tex.).

[17] *United States v. Cockerham*, No. 12-50960 (5th Cir. Aug. 20, 2013).

[18] Pet'r's Pet., Nov. 15, 2013, ECF No. 3, *Cockerham v. Chapa*, EP-13-CV-327-KC (W.D. Tex.) [hereinafter, "First Petition"].

Court's opinion in *United States v. Santos*[19] — which held the federal money-laundering statute applied only to transactions involving criminal profits, not criminal receipts[20] — Petitioner maintained that he was actually innocent of the money laundering conspiracy because "it was never found that [he] had profited from any of the alleged unlawful activity."[21]   The Court dismissed the second motion, however, for want of jurisdiction after finding that Petitioner could have raised the issue in his initial § 2255 motion.[22]   The Fifth Circuit affirmed the Court's decision.[23]

Petitioner then filed an original writ of habeas corpus in the United States Supreme Court on June 9, 2015.[24]   In his single issue, Petitioner asserted that the trial court lacked jurisdiction over him as a major in

---

[19] 553 U.S. 507 (2008).

[20] *Id.*, at 524.

[21] First Pet. 7.

[22] *Cockerham v. Chapa*, EP-13-CV-327-KC, 2013 WL 6057851, at *3 (W.D. Tex. Nov. 15, 2013).

[23] *Cockerham v. Chapa*, 578 F. App'x 360, 361 (5th Cir. 2014).

[24] *In re Cockerham*, 136 S. Ct. 380 (2015).

the United States Army:

> Whether the judgment entered against a Major in the Army and member of [the] Armed Forces, for admitted conduct occurring in foreign countries and during war, was entered without subject matter jurisdiction and in violation of the Military Extraterritorial Jurisdiction Act, as well as both Article I and Article III of the Constitution.[25]

The Supreme Court denied the petition on October 19, 2015.[26]   The Current Petition followed on December 14, 2015.

In his Current Petition, Petitioner challenges the trial court's constitutional and statutory authority to exercise jurisdiction over him as a member of the Armed Forces subject to the Uniform Code of Military Justice ("UCMJ"):

> The Judgment dated 18 December, 2009, was entered without Article III, §§ 1 and 2 Judicial Power and Subject Matter Jurisdiction over the conduct of an Article I Military Officer, occurring during a time of and theater of War in Iraq and Kuwaite [sic], and where Petitioner's only two co-defendants were at all times subject to the Uniform Code of Military Justice as was Petitioner.[27]

---

[25] First Pet. 3.

[26] *In re Cockerham*, 136 S. Ct. 380 (2015).

[27] Current Pet. 4.

Petitioner argues that in 18 U.S.C. § 3261(d), Congress withheld jurisdiction over members of the Armed Forces subject to the UCMJ from Article III courts unless the "'indictment charges that member committed the offense with one or more other defendants, at least one of whom is not subject to'" the UCMJ.[28]

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction.   They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."[29]   Federal courts have the power under 28 U.S.C. § 2241 to grant writs of habeas corpus.   However, "[h]abeas corpus relief is extraordinary and 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that . . . if condoned, result in a complete miscarriage of justice.'"[30]   To prevail, a

---

[28] *Id.* at 5 (quoting 18 U.S.C. § 3261(d)(2)).

[29] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

[30] *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

habeas corpus petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."[31] Furthermore, a § 2241 petition is subject to summary dismissal if it appears from the face of the pleading that the petitioner is not entitled to relief.[32]

Generally, "[a] section 2241 petition on behalf of a sentenced prisoner attacks the manner in which a sentence is carried out or the prison authorities' determination of its duration."[33]   In the instant case, however, Petitioner challenges his underlying convictions.   The primary means of collaterally attacking a federal conviction is generally a motion to vacate, set aside, or correct a sentence, pursuant to 28 U.S.C. § 2255.[34]

There is, however, a "savings clause" in § 2255 which acts as a

---

[31] 28 U.S.C. § 2241(c)(3).

[32] *See Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998) (affirming summary dismissal under § 2241 without ordering an answer from respondent); *see also* Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (providing for summary dismissal of habeas petition).

[33] *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted).

[34] 28 U.S.C. § 2255.

limited exception to the general rule outlined above.[35]   Pursuant to this savings clause, a federal court may consider a § 2241 petition that challenges a federally imposed sentence when the petitioner establishes that the remedy under § 2255 is "inadequate or ineffective."[36]   In order to meet this "inadequate or ineffective" requirement, the claim must be "based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense," and the claim must have been "foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion."[37]

With these principles in mind, the Court turns to Petitioner's claim.

---

[35] *See Id.* § 2255(e) ("An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.").

[36] *Tolliver v. Dobre*, 211 F.3d 876, 878 (5th Cir. 2000).

[37] *Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001).

## III.  ANALYSIS

In his § 2241 petition, Petitioner seeks relief from his conviction in the United States District Court for the Western District of Texas, an Article III court, for conspiracy to defraud the United States, bribery, and conspiracy to commit money laundering.   He claims that "at all times [he] was a member of the armed forces and subject to the [UCMJ]."[38]   He argues that his custody violates 18 U.S.C. § 3261(d)(2), which he maintains limits the jurisdiction of an Article III court over a member of the Armed Forces.

### A.    Petitioner does not meet the requirements of the "savings clause"

As discussed above, a petitioner may proceed with an attack on the validity of a conviction and sentence in a § 2241 petition only if he can meet the requirements of the "savings clause" in § 2255(e).[39]   In this case, Petitioner does not:   (1) base his claim on a retroactively applicable Supreme Court decision; (2) contend that he was convicted of a nonexistent offense; and (3) argue that circuit law precluded him from

---

[38] Current Pet. 3.

[39] *Kinder*, 222 F.3d at 212.

asserting his claim at the time of his trial, appeal, or § 2255 motion.[40]

Thus, Petitioner does not meet the requirements of the "savings clause."

### B.   Even if Petitioner met the requirements of the "savings clause," the Court would not grant him relief

Moreover, even if Petitioner meets the requirements of the "savings clause," the Court will deny him relief for three reasons.   First, district courts share concurrent jurisdiction with military courts.   Second, the indictment did not charge Petitioner with a violation of 18 U.S.C. § 3261(d)(2).   Finally, Petitioner pleaded guilty to three offenses—conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; bribery, in violation of 18 U.S.C. § 201(b)(2)(A) and (C); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h)—all of which have extraterritorial reach.

#### 1. *District courts share concurrent jurisdiction with military courts*

It is well settled that "federal district courts share concurrent jurisdiction with military courts over 'all offenses against the laws of the

---

[40] *Reyes–Requena*, 243 F.3d at 904.

United States' committed by military personnel."[41]   The Supreme Court explains that "'[w]hile . . . the jurisdiction of general courts-martial extends to all crimes, not capital, committed against public law by an officer or soldier of the Army within the limits of the territory in which he is serving, this jurisdiction is not exclusive, but only concurrent with that of the civil courts.'"[42]   "Consequently simply because a member of the armed forces may be punished by military court martial for an offense provides no justification for concluding that a District Court lacks jurisdiction to punish him for the same offense, if such offense is violative of a federal law."[43]   Therefore, Petitioner's assertion that federal district courts do not share concurrent jurisdiction with military courts is without merit.

### 2. The indictment did not charge Petitioner with a violation of 18 U.S.C. § 3261

Petitioner claims that he is in custody in violation of 18 U.S.C.

---

[41] *United States v. Mariea*, 795 F.2d 1094, 1101 (1st Cir. 1986) (quoting 18 U.S.C. § 3231).

[42] *Gosa v. Mayden*, 413 U.S. 665, 673 (1973) (quoting *Grafton v. United States*, 206 U.S. 333, 348 (1907)).

[43] *United States v. Walker*, 552 F.2d 566, 567 (4th Cir. 1977).

§ 3261, which he asserts limits the jurisdiction of Article III courts over members of the Armed Forces subject to the UCMJ. [44]   Section 3261, the Military Extraterritorial Jurisdiction Act of 2000 ("MEJA"), establishes "[f]ederal jurisdiction over offenses committed outside the United States by persons employed by or accompanying the Armed Forces."[45] Congress passed this law because "[b]etween 1955 and 1960, the Supreme Court specifically prohibited the use of military courts . . . to try civilian family members . . . and . . . civilian employees of the military who commit crimes overseas during times of peace."[46]   "Congress enacted MEJA in response to a jurisdictional gap created by host nations' reluctance to prosecute crimes . . . committed by civilians accompanying the Armed Forces outside the United States."[47]   "To close this gap, MEJA

---

[44] Current Pet. 5.

[45] H.R. Rep. No. 106–778(I), 1 (2000), 2000 WL 1008725 (Leg. Hist.), *1.

[46] *United States v. Ali*, 70 M.J. 514, 519 (A. Ct. Crim. App. 2011) *aff'd*, 71 M.J. 256 (C.A.A.F. 2012) (citing *Reid v. Covert*, 354 U.S. 1, 5 (1957) ("We hold that Mrs. Smith and Mrs. Covert could not constitutionally be tried by military authorities."); *Grisham v. Hagan*, 361 U.S. 278, 280 (1960); *McElroy v. United States ex rel. Guagliardo*, 361 U.S. 281, 286–87 (1960)).

[47] *United States v. Arnt*, 474 F.3d 1159, 1161 (9th Cir. 2007).

14

creates federal jurisdiction over [civilians] who commit felonies while 'accompanying the Armed Forces outside the United States.'"[48]   MEJA also allows the Government to prosecute active duty military personnel, but only if they are charged "with committing the offense together with one or more other defendants, at least one of whom is not subject to the UCMJ."[49]   Specifically, § 3261(d) provides:

> No prosecution may be commenced against a member of the Armed Forces subject to chapter 47 of title 10 (the Uniform Code of Military Justice) *under this section* unless—
>
> > (1)  such member ceases to be subject to such chapter; or
> >
> > (2)  an indictment or information charges that the member committed the offense with one or more other defendants, at least one of whom is not subject to such chapter.[50]

Petitioner was not, however, prosecuted *under this section*.

Rather, the Government prosecuted him pursuant to:   18 U.S.C. § 371

---

[48] *Id.* (quoting 18 U.S.C. § 3261(a)(1)).

[49] H.R. Rep. No. 106-778(I), at 11, 2000 WL 1008725, at *11.

[50] 18 U.S.C. § 3261(d) (emphasis added).

for conspiracy to defraud the United States; 18 U.S.C. § 201(b)(2)(A) and (C) for bribery, and 18 U.S.C. § 1956(h) for conspiracy to commit money laundering.[51]   Thus, Petitioner's argument that his custody violates § 3261(d)(2) is meritless.

### 3. Extraterritorial jurisdiction exists as to each offense alleged in the indictment

"Generally, there is no constitutional bar to the extraterritorial application of the United States penal laws."[52]   Further, it is undisputed that "the legislative authority of the United States over its citizens extends to conduct by Americans . . . even within the territory of other sovereigns."[53]   Moreover, "international law principles do not constrain this legislative authority, because citizenship alone is generally recognized as a relationship sufficient to justify the exercise of

---

[51] Factual Basis for Guilty Plea 3.

[52] *United States v. Felix–Gutierrez*, 940 F.2d 1200, 1204 (9th Cir. 1991) (citing *Chua Han Mow v. United States*, 730 F.2d 1308, 1311 (9th Cir. 1984)).

[53] *United States v. Mitchell*, 553 F.2d 996, 1001 (5th Cir. 1977) (citations omitted).

jurisdiction by a state."[54]

The Supreme Court explained in *Morrison v. Nat'l Australia Bank Ltd.*,[55] however, that it is a "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'"[56] Thus, "unless there is the affirmative intention of the Congress clearly expressed" to give a statute extraterritorial effect, a court "must presume it is primarily concerned with domestic conditions."[57]  This presumption against extraterritoriality does not specifically require "that a statute say 'this law applies abroad.'  Assuredly context can be consulted as

---

[54] *Id.* (citing Restatement (Second) of the Foreign Relations Law of the United States § 30 (1965)).

[55] 561 U.S. 247 (2010).

[56] *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (quoting *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991).

[57] *Id.* (citing *Arabian Am. Oil Co.*, 499 U.S. at 248).   *See also Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 906 (5th Cir. 1997) ("Federal courts are courts of limited jurisdiction, and we therefore view the debate among the circuits against the background that legislation, 'unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'") (quoting *Foley Bros. v. Filardo*, 336 U.S. 281, 285 (1949)).

well."[58]   Furthermore, the Supreme Court cautioned in *United States v. Bowman*,[59] that:

> the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the Government's jurisdiction, but are enacted because of the right of the Government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers or agents.[60]

In 18 U.S.C. § 371, or Count 1, Congress made it unlawful for "two or more persons [to] conspire . . . to defraud the United States or any agency thereof in any manner or for any purpose."[61]   Section 371 admittedly "fails to offer concrete evidence of its application abroad."[62]   Yet, context matters.[63]   Congress enacted § 371 "because of the right of the Government to defend itself against . . . fraud wherever

---

[58] *Morrison*, 561 U.S. at 265.

[59] 260 U.S. 94, 98 (1922).

[60] *Id.* at 98.

[61] 18 U.S.C. § 371.

[62] *United States v. Ali*, 718 F.3d 929, 941–42 (D.C. Cir. 2013).

[63] *Morrison*, 561 U.S. at 265.

perpetrated . . . committed by its own citizens, officers or agents."[64]

Limiting the "locus to the strictly territorial jurisdiction would . . .

greatly . . . curtail the scope and usefulness of the statute and leave open

a large immunity for frauds . . . committed by [its] citizens . . . in foreign

countries."[65]   Accordingly, Congressional intent to apply § 371

extraterritorially may "be inferred from the nature of the offense."[66]

Similarly, in 18 U.S.C. § 201, or Count 4, Congress criminalized

acts of bribery committed against the United States by "an officer . . .

acting for or on behalf of the United States, or any department, agency or

branch of Government thereof."[67]   In enacting § 201(b)(2), Congress

expressly manifested its intent to discourage public officials from "being

influenced in the performance of any official act" or "being induced to do

or omit to do any act in violation of the official duty of such official."[68]

---

[64] *Bowman,* 260 U.S. at 98.

[65] *Id.*

[66] *Id.*

[67] 18 U.S.C. § 201(b)(2).

[68] *Id.* §§ 201(b)(2)(A) and (C).

Again, context matters.[69]   "Congress drafted its bribery statutes with broad jurisdictional language, and periodically amended the provisions to ensure that the scope of federal criminal liability kept pace with the growth and diversification of the federal government."[70]   Further, "[m]oney is fungible, bribed officials are untrustworthy stewards of federal funds, and corrupt contractors do not deliver dollar-for-dollar value."[71]   Finally, limiting this statute to domestic enforcement, given the number of military personnel and other public officials stationed abroad, would "curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens . . . in foreign countries."[72]   Thus, courts have found "that [a] statute proscribing the receipt of bribes by public officials is not restricted in its application to misconduct in the United States."[73]   Congressional intent

---

[69] *Morrison*, 561 U.S. at 265.

[70] *Dixson v. United States*, 465 U.S. 482, 491–92 (1984).

[71] *Sabri v. United States*, 541 U.S. 600, 606 (2004).

[72] *See Bowman,* 260 U.S. at 98.

[73] *In re Extradition of Garcia*, 615 F. Supp. 2d 162, 171 (S.D.N.Y. 2009) (citing *United States v. Kennings*, 861 F.2d 381, 388 (3d Cir. 1988)

to apply § 201 extraterritorially may "be inferred from the nature of the offense."[74]

In 18 U.S.C. § 1956, or Count 5, Congress criminalized concealing or disguising the nature, the location, the source, the ownership, or the control of the proceeds from unlawful financial activities.[75]   The statute expressly extended the reach of this money-laundering statute to the conduct of American citizens abroad:

> There is extraterritorial jurisdiction over the conduct prohibited by this section if: (1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and (2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.[76]

Here, the convicted offenses encapsulate extraterritorial jurisdiction given the "right of the Government to defend itself against

---

(extending application of Section 201 to bribery of witness before a Virgin Islands court).

[74] *Bowman,* 260 U.S. at 98.

[75] 18 U.S.C. § 1956(a).

[76] *Id.* at § 1956(f).

21

obstruction, or fraud wherever perpetrated."[77]   Since §§ 371, 201, and
1956 do extend their reach beyond American soil, Counts 1, 4, and 5
implicate Petitioner's conduct abroad.

## IV.   CONCLUSION

After carefully examining the pleadings, the Court finds that
Petitioner could have challenged the jurisdiction of the Court at trial, on
appeal, or in a timely § 2255 motion.   The Court further finds that
Petitioner has not met the criteria required to support a claim under the
"savings clause" of § 2255.   Therefore, he is not entitled to § 2241 relief.
The Court additionally finds that Congress did not withhold jurisdiction
over members of the Armed Forces subject to the UCMJ from Article III
courts in 18 U.S.C. § 3261(d).   The Court finally finds that Petitioner
pleaded guilty to three offenses—conspiracy to defraud the United
States, in violation of 18 U.S.C. § 371; bribery, in violation of 18 U.S.C.
§ 201(b)(2)(A) and (C); and conspiracy to commit money laundering, in
violation of 18 U.S.C. § 1956(h) — which have extraterritorial reach.

Accordingly, **IT IS ORDERED** that Petitioner John Lee
Cockerham, Jr.'s "Petition for a Writ of Habeas Corpus under 28 U.S.C.

---

[77] See *Bowman*, 260 U.S. at 98.

§ 2241" (ECF No. 1-2) is denied and his cause is **DISMISSED WITH PREJUDICE**.

    **IT IS FURTHER ORDERED** that all pending motions are **DENIED** as moot.

    **IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

    **SIGNED** this _____ day of January, 2016.


_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE